UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
CRIMINAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No. 19-cr-0028 (EGS) |
| | : | |
| v. | : | |
| | : | |
| KENDRA COLES | : | <u>UNDER SEAL</u> |
| | : | |
| Defendant. | : | |

==============================

**<u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>**

Defendant Kendra Coles, by and through undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing. In support thereof, Defendant states as follows:

**I.   FACTS/PROCEDURAL HISTORY**

**a. <u>Conspiracy to Commit Insurance Fraud DC Code §§ 1805(a)(1) and 3225.02</u>**

In 2017, Defendant Kendra Coles' (Ms. Coles) Honda Accord was experiencing significant mechanical issues and after taking it to a mechanic she discovered that it would require between one thousand seven hundred and three thousand one hundred dollars ($1,700-$3,100) to repair the vehicle. In addition, Ms. Coles' vehicle had approximately one thousand five hundred and five dollars ($1,505) in outstanding fines and fees associated with parking tickets. Ms. Coles mentioned these costs to a family friend, Earl Johnson**,** who advised her that he could help to resolve this problem. Earl Johnson proposed that Ms. Coles allow him to drive the car into Washington, D.C., where he would set it on fire. Ms. Coles would then report the vehicle as stolen and file an insurance claim with her insurer GEICO. Ms. Coles agreed, and on July 31, 2017, Johnson burned the vehicle in an area in the vicinity of 1027 45th Street, NE, Washington, D.C. On August 1, 2017, Ms. Coles reported the vehicle as stolen to the Prince George's County Police Department, and she then filed an insurance claim with GEICO. In September or October 2017, GEICO sent Ms. Coles a check for approximately six thousand six hundred twenty-six dollars and fifty-two cents ($6,626.52), and she

1

deposited the check in her bank account and subsequently withdrew the funds.

On March 28, 2018, Ms. Coles was arrested and charged in the Superior Court of the District of Columbia ("Superior Court") for Burning of One's Property with Intent to Defraud. Ms. Coles was subsequently contacted by the United States Attorney's Office, through counsel, and asked if she was interested in being debriefed with the potential for a cooperation agreement. Ms. Coles agreed, and she provided the government with information regarding her pending case in Superior Court, as well as a bribery scheme that involved members of MPD. As a result, Ms. Coles was charged with and plead guilty to one count of bribery in violation of 18 U.S.C. § 201. Ms. Coles provided information, assisted in the recovery of MPD property, and actively cooperated with an ongoing bribery investigation. On March 13, 2019, a praecipe of dismissal was filed, and Ms. Coles' insurance fraud charge was transferred to this Court and joined with her bribery case.

b. **Bribery 18 U.S.C. § 201**

In 2006, Ms. Coles began working at the District of Columbia Metropolitan Police Department ("MPD") as a civilian employee and continued her employment with MPD until she resigned in 2017, to pursue another career opportunity. Throughout her employment with MPD Ms. Coles had access to COBALT, which is an online electronic record management system used by MPD to manage reports for all incidents handled by MPD officers, including MPD Traffic Crash Reports. MPD Traffic Crash Reports would normally contain identifying information for individuals involved in vehicular accidents in the District of Columbia, including their names, addresses, and telephone numbers, in addition to whether or not the individual was injured. Prior to 2015, these reports were publicly available from an MPD clerical office.

Beginning in 2015, MPD issued General Order # 401.03, Traffic Crash Reports, which Ms. Coles was bound to follow. General Order 401.03 restricted the distribution of MPD Traffic Crash Reports to only the following individuals: (1) persons involved in a vehicular accident; (2) their

2

spouse, or if they are a juvenile, their parents/guardian; or (3) legal representatives, their staff or investigators who represented persons involved in a vehicular accident. Prior to and subsequent to General Order 401.03 being issued unscrupulous ambulance chasers (who some may refer to as personal injury attorneys) had a practice of obtaining Traffic Crash Reports to directly solicit legal services to individuals who were injured in vehicular accidents within the District of Columbia. These ambulance chasers would obtain Traffic Crash Reports from "runners", who are individuals that would connect the ambulance chasers with accident victims. General Order 401.03 was aimed at protecting the confidentiality of crash victims to limit their solicitations by ambulance chasers and their runners. The runners and ambulance chasers sought to keep the personal injury cases flowing, so they needed a way to obtain the Traffic Crash Reports despite this new policy. This is where Ms. Coles enters the picture, and as a result, finds herself facing a maximum of fifteen (15) years imprisonment for bribery.

In late 2015 or early 2016, Ms. Coles met a runner known as Warren Johnson ("Johnson") at a "Beat the Streets" event hosted by MPD. Ms. Coles was advised that Johnson needed to obtain "names", which implied the identifying information for individuals injured in vehicular accidents in the District of Columbia. Johnson offered to pay Ms. Coles three hundred and fifty dollars ($350) per week in exchange for these names, and Ms. Coles agreed. At or about the same time Ms. Coles agreed to provide Johnson names she was contacted by Marvin Parker ("Parker"). Parker also sought to identify information for individuals injured in vehicular accidents in the District of Columbia, offered to pay Coles five hundred dollars ($500) per week for that information, and Coles agreed. Between August 23, 2015, and October 7, 2017, Ms. Coles received in excess of forty thousand dollars ($40,000) from Parker and Johnson for providing the identifying information for individuals injured in vehicular accidents in the District of Columbia, which she obtained by accessing MPD Traffic Crash Reports via COBALT.

## II.     DEFENDANT'S CHARACTER

Ms. Coles takes pride in her family and her community, and despite her mistakes described in the prior section of this Memorandum, she is a productive and law-abiding member of society. In addition, Ms. Coles has a strong support network of family and friends who have written letters of support to provide this Court with a better illustration of Ms. Coles' character, and to provide reassurances to this Court that Ms. Coles understands the seriousness of her actions, is remorseful for them and that she will not recidivate.

Retired Assistant Chief of Police Diane Groomes describes Ms. Coles as a dedicated, loyal, and hardworking individual[1]. Ms. Groomes's letter is a glowing endorsement of Ms. Coles as a model employee, and she highlights instances where Ms. Coles went above and beyond her duties to give back to the community by managing community outreach programs and completing audits for the Fraternal Order of Police[2]. Ms. Coles' supervisor at MPD during the time that she engaged in the bribery scheme was Ms. Groomes, but at the time Ms. Groomes was unaware of Ms. Coles' criminal conduct. After Ms. Groomes retired, she provided Ms. Coles with an employment opportunity at the newly constructed complex at the Wharf located on Maine Avenue, S.W., Washington, D.C. Ms. Coles resigned from MPD and accepted the employment opportunity extended to her by Ms. Groomes. After Ms. Coles was arrested Ms. Groomes regrettably had to terminate her employment at the Wharf. Despite this history, Ms. Groomes so deeply believes in Ms. Coles that she took the time to write a letter of support to express her understanding and admiration.

Many of Ms. Coles' former coworkers from MPD have also written letters of support for her. Jhonae Mitchell attributes her position at MPD and her career success in part to the advice and encouragement that Ms. Coles provided to her[3]. In addition, Ms. Mitchell highlights the dedication

---

[1] *See* Exhibit 1, Letter from Diane Groomes.
[2] *See Id.*
[3] *See* Exhibit 2, Letter from Jhonae Mitchell.

4

that Ms. Coles had towards her children and her drive to provide them with the best opportunities[4]. Lt. Michael O'Harran highlights the contributions that Ms. Coles made to the community outreach programs, including the "Beat the Streets", "Back to School" and "Shop with a Cop" programs that were successful in large part due to Ms. Coles' contributions. Ms. Coles also supported other seasonal activities, such as haunted houses at police stations and Thanksgiving meals to those in need[5]. Officer Ashley J. Keels also recounts the significant contributions that Defendant made towards community outreach programs and to support community events. Lieutenant O'Harron and Officer Keels are confident that Ms. Coles will correct her errors and remain a productive and law-abiding citizen[6].

Ms. Coles' aunt, Terry Powell, describes Ms. Coles as patient, helpful and understanding[7]. Ms. Powell highlights instances where Ms. Coles stepped in to care for her grandfather when he had a stroke by changing diapers, cooking, cleaning and doing other chores[8]. In addition, Ms. Coles traveled to Georgia when her grandmother became ill to assist in her grandmother's care and to support Ms. Powell[9]. Ms. Powell has known Ms. Coles her whole life and attests to the fact that Ms. Coles is remorseful for her conduct and is working to improve herself so that it never happens again[10].

Ms. Coles' close friend Amber Thrasher describes the positive impact that Ms. Coles has had on her and highlights Ms. Coles' dedication to her family and the steps that she is taking to further her career in the medical field[11]. Ms. Thrasher mentions the lengths that Ms. Coles has gone so that

---

[4] *See Id.*
[5] *See* Exhibit 3, Letter from Lt. Michael O'Harran.
[6] *See* Exhibit 4, Letter from Ofc. A.J. Keels.
[7] *See* Exhibit 5, Letter from Terry Powell.
[8] *See Id.*
[9] *See Id.*
[10] *See Id.*
[11] *See* Exhibit 6, Letter from Amber Thrasher.

her children can be financially stable in their adult lives, as well as Ms. Coles' significant involvement in church functions[12]. Her friend Robinne Thornton wrote to highlight Ms. Coles' dedication to mentoring youth in the community, both during her time at MPD and with young girls who were involved in cheerleading with her daughter[13]. Ms. Thornton also mentions how helpful Ms. Coles was in providing assistance when she was incapacitated during a surgery, and her perception of Ms. Coles as caring deeply for the people in her life and her community[14]. Ms. Thornton's daughter Kiya Thornton also wrote a letter to talk about how Ms. Coles served as her mentor and supported her through her grade school years, college and continues that support to this date[15].

Ms. Coles' brother, Lawrence Henderson, has also written a letter to express his support for his sister[16]. Mr. Henderson highlights the fact that Ms. Coles is family-oriented and puts the welfare of her family above her own[17]. Ms. Coles' son, Jared Crippen, wrote a letter to talk about how great of a mother and role model Ms. Coles has been to him, and that she always provided for their family, had time to give them and still found time to volunteer at community events[18]. Ms. Coles' mother Marilyn Jones also wrote a letter of support for Ms. Coles[19]. Ms. Jones talks about the steps that Ms. Coles took to rehabilitate herself after her arrest, including being diligent about maintaining employment, going back to school in the medical field and receiving mental health treatment from a therapist[20]. Ms. Jones has always supported Ms. Coles and will continue that support. She recently

---

[12] *See Id.*
[13] *See* Exhibit 7, Letter from Robinne Thornton.
[14] *See Id.*
[15] *See* Exhibit 8, Letter from Kiya Thornton.
[16] *See* Exhibit 9, Letter from Lawrence Henderson.
[17] *See Id.*
[18] *See* Exhibit 10, Letter from Jared Crippen.
[19] *See* Exhibit 11, Letter from Marilyn Jones.
[20] *See Id.*

gifted Ms. Coles seven thousand dollars ($7,000.00) so that her husband could purchase a house[21]. Ms. Jones also wanted to highlight the fact that Ms. Coles has been very giving to both the community and her family including assisting her grandmother after her grandfather passed away[22]. Frank Mitchell, who is Ms. Jones' partner, wrote a letter to commend Ms. Coles for her hard work locating and maintaining employment after her arrest, and that he believes she will continue on the right path[23]. Mr. Mitchell is another strong part of Ms. Coles' support network, and he recently provided Ms. Coles with an eight-thousand-dollar ($8,000.00) gift so that Ms. Coles' husband could purchase a home[24].

Finally, Ms. Coles wrote a letter to provide this Court with additional information about her background and character that is not captured in the presentence report, as well as to express her remorse and dedication to remaining on the right path[25]. Ms. Coles was doing excellent academically and by all accounts thriving, despite the fact that her father was completely absent from her life[26]. Unfortunately, there was a void of male affection in her life and she met and fell for the wrong man[27]. Ms. Coles began to skip school her senior year and dropped out without graduating[28]. Ms. Coles mother came down hard and sent her to the Job Corps in West Virginia, where Ms. Coles received her GED and a certification in Offset Printing and Carpentry[29]. After returning home from the Job Corps Ms. Coles fell back in with wrong man and became pregnant with her daughter[30]. Unfortunately, the father of her daughter had a serious drug problem and she was left to raise her

---

[21] *See Id.*; *See also* Exhibit 12, Gift Letter from Marilyn Jones.
[22] *See* Exhibit 11, Letter from Marilyn Jones.
[23] *See* Exhibit 13, Letter from Frank Mitchell.
[24] *See Id.*
[25] *See* Exhibit 14, Letter from Kendra Coles.
[26] *See Id.*
[27] *See Id.*
[28] *See Id.*
[29] *See Id.*
[30] *See Id.*

daughter on her own[31]. Ms. Coles met another man and approximately two years later was pregnant with her son[32]. Things did not work out with her son's father, and she was now raising two children alone[33].

Ms. Coles Began working for MPD and was successfully balancing her professional career there while being present and active in both of her children's lives[34]. She then met her current husband, and her finances began to strain[35]. Her current husband decided to go back to school, leaving Ms. Coles to provide for him and her family[36]. She was also forced to purchase another vehicle so that her husband could attend school in Baltimore, which pushed her finances to the limit, as she was not receiving any child support from either father[37]. Ms. Coles was approached at work by Warren Johnson, and then Marvin Parker, about providing them information from MPD Traffic Crash Reports in exchange for money, and she accepted their offer[38]. Ms. Coles then began to experience significant mechanical issues with her one vehicle and made the terrible decision to have the vehicle safely destroyed and then file an insurance claim[39].

Ms. Coles takes full responsibility for her actions and is remorseful for her conduct[40]. She has been taking steps to maintain steady employment and gain additional skills and credentials to allow her to transition to the medical field[41]. Her hard work has paid off, and she was recently offered a position with MedStar National Rehabilitation Network, and if she is not incarcerated, she is

---

[31] *See Id.*
[32] *See Id.*
[33] *See Id.*
[34] *See Id.*
[35] *See Id.*
[36] *See Id.*
[37] *See Id.*
[38] *See Id.*
[39] *See Id.*
[40] *See Id.*
[41] *See Id.*

expected to start on April 19, 2021[42].

### III.   DEFENDANT'S PUNISHMENT

a. **Defendant's Substantial Cooperation**

Ms. Coles immediately accepted responsibility for her bribery charge, immediately began providing the government with information and assisted with the recovery of an MPD issued laptop that could be used to access COBALT. Prior to Ms. Coles' debriefing, the government was unaware of the existence of an MPD laptop that contained sensitive data, that was unaccounted for because an inventory slip that erroneously recorded her MPD issued laptop as being returned upon her resignation. Ms. Coles volunteered this information and through counsel quickly surrendered the laptop to the government. In addition, as set forth in the government's Memorandum in Aid of Sentencing, Ms. Coles engaged in active cooperation by making recorded phone calls with Parker and Johnson and completing four (4) in-person transactions with Parker. Ms. Coles provided the government with information that the government could have used to bring criminal charges against Earl Johnson, the individual who burned Ms. Coles' Honda Accord and was a participant in the insurance fraud conspiracy. In addition to the information and active cooperation that Ms. Coles provided to assist the government in their investigation and prosecution of Parker and Johnson, Ms. Coles provided the government with information regarding MPD officers who knowingly assisted. her in accessing COBALT so that she could disperse information from MPD Traffic Crash Reports to runners. Ms. Coles' cooperation led to Parker's arrest. As a result of Parker's arrest, it was discovered that another MPD employee, Aaron Willis, had also provided him with information from Traffic Crash Reports. Parker did not provide substantial cooperation and this Court sentenced him to an eighteen (18) months term of imprisonment.

---

[42] *See Id.*

### b. **Guidelines and 18 U.S.C. § 3553(a) Factors**

The parties agree that Ms. Coles' total offense level under the United States Sentencing Guidelines ("USSG") should be 15[43], putting her guideline range at eighteen (18) to twenty-four (24) months. However, Ms. Coles argues that this Court should make a downward departure from the guidelines based on the factors set forth in 18 U.S.C. § 3553(a), which include the following: (1) The nature and circumstances of the offense; (2) The history and characteristics of the defendant; (3) The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from the defendant and provide the defendant with needed educational/vocational training, medical care or other correctional treatment in the most effective manner; (4) The kinds of sentences available; (5) The applicable USSG range; (6) The need to avoid unwarranted disparities among defendants with similar records who are found guilty of similar conduct; and (7) The need to provide restitution to any victims. Based on these factors, Ms. Coles believes that the appropriate sentence is a period of supervised probation. In the alternative, Ms. Coles respectfully requests that this Court sentence her to a period of eighteen (18) months home detention, with release to leave her home to attend work Monday through Friday from 8:30 am until 6:00 pm, as well as medical/dental appointments. Pursuant to the plea agreement, the government does not oppose a request that the sentences for Counts I and II run concurrently. Therefore, Ms. Coles respectfully requests that any sentences imposed by the court run concurrently.

---

[43] At the time Defendant entered a plea agreement counsel for Defendant reserved the right to argue at sentencing that the two (2) point USSG enhancement pursuant to § 2C1.1(b)(1) did not apply based on the lack of binding authority in this Circuit on the issue. However, after reviewing the available precedent, and the facts of Defendant's case, counsel for Defendant cannot in good faith argue that the § 2C1.1(b)(1) enhancement does not apply. Unfortunately, the fact that Defendant received money from both Johnson and Parker, and the complete lack of evidence to suggest a connection between the two, leads counsel for Defendant to reluctantly concede that the § 2C1.1(b)(1) enhancement does apply, putting Defendant at a total offense level of nineteen (19) prior to the four (4) point downward departure pursuant to USSG §5K1.1.

The offenses that Ms. Coles has been charged with can be described as economic crimes, and illustrate actions taken by an individual who was in a difficult financial position and made some bad decisions. No one was physically harmed by either of the offenses committed by Ms. Coles and if she pays restitution to GEICO, the only victim will be made whole. Ms. Coles' bribery offense, while a violation of the public trust, is not as egregious as the government makes it out to be. Roll the calendar back six years and Ms. Coles' conduct would be perfectly legal. Ms. Coles' roll in the bribery offense should also be viewed as minimal, given the fact that it is the ambulance chasers, in complete disregard for the District of Columbia Rules of Professional Conduct, specifically Rule 7.1, who are seeking to take advantage of accident victims. In addition, ignorance of the law is not a defense, but Ms. Coles was completely unaware that her transactions with Parker and Johnson were in any way illegal. Ms. Coles was fully aware that she could be sanctioned by MPD, or possibly terminated, for her conduct, but it was not until she began to discuss a disposition with her attorney that she realized the criminal nature of her conduct.

Ms. Coles provided the government with substantial cooperation and immediately accepted responsibility for her conduct. It is an unwarranted sentence disparity for Ms. Coles to be sentenced to eighteen (18) months incarceration, the same as Parker, when she provided substantial cooperation. The justice system should reward individuals who cooperate and provide substantial assistance to the government in investigating criminal activity, and sentencing Ms. Coles to the same term of imprisonment as Parker would not further this policy goal.

Ms. Coles has no criminal history, and her crimes were acts of indiscretion committed by a loving mother who wanted to provide for her family. Ms. Coles did not buy luxury goods or spend the money partying at clubs or on other forms of entertainment for herself. Instead, albeit wrong, Ms. Coles used these funds to pay for expenses related to her children, including educational expenses such as tuition, expenses related to proms and graduation and to assist her

children in starting their adult lives. On page nineteen (19) of the presentence report, it indicates that Ms. Coles jointly purchased a residence at 612 Millwoof Drive, Capitol Heights, Maryland. However, Ms. Coles' husband is solely responsible for the mortgage payment[44]. Ms. Coles found herself in difficult economic circumstances and made some regrettable decisions. However, Ms. Coles immediately accepted responsibility for this conduct and began cooperating with the government in her first steps towards redemption.

Ms. Coles is in a stable environment and she is currently gainfully employed helping foster children in her community. In addition, Ms. Coles is currently attending classes to further her professional career working in medical administration. Ms. Coles respects the rule of law and is an extremely low risk for recidivism. It would not be in the interest of justice for Ms. Coles to be incarcerated for any period of time as it would not serve as a further deterrent to her or any other individuals in her position. Ms. Coles understands the significant legal jeopardy that she placed herself in based upon her actions, and the negative impact that it had on her family and community. Ms. Coles' criminal conduct caused her to experience further financial hardship, as she had to liquidate her retirement account to pay for her costs and attorney's fees associate with this case. In addition, Ms. Coles will be subject to forfeiture of over forty thousand dollars ($40,000) and restitution to GEICO of over six thousand dollars ($6,000).

Finally, this Court should consider the current COVID-19 pandemic and the impact that it is having on correctional facilities across the country. Ms. Coles has not yet been vaccinated for COVID-19, and while she is not classified as high risk due to her youth and good health, even individuals who are young and healthy have died of COVID-19 or have developed chronic lung conditions as a result of contracting the disease. These health dangers, and the significant stress that they bring to individuals (in particular in crowded prisons with little regard for the health and

---

[44] *See* Exhibit 15, Mortgage Statement for 612 Millwoof Drive.

safety of inmates), make a period of incarceration for Ms. Coles significantly more punitive than in normal times.

In *United States v. King* the Court ordered that the defendant, who participated in a conspiracy to file fraudulent tax returns, be sentenced to three (3) years' probation with a condition of home detention, despite the fact that her guideline range was ten (10) to sixteen (16) months. *United States v. King*, 201 F. Supp. 3d 167 (D.D.C. 2016). Similar to Ms. Coles' case, the defendant in *King*, had no criminal history score and was facing a comparable crime. However, the amount of money involved in Ms. Coles' case is nearly half of what the *King* defendant was responsible for taking, and Ms. Coles did not defraud the United States government. Instead, Ms. Coles took money from runners, who were working with unscrupulous ambulance chasers to directly solicit legal services to victims of vehicular accidents. While this is unsavory behavior that degrades the nobility of the legal profession there is no indication that the ambulance chasers took advantage of clients or prospective clients. In some instances they likely provided sound legal services that actually assisted injured individuals in obtaining monetary compensation to pay for medical bills and other related expenses. Therefore, just as in *King* it would be in the interest of justice for this Court to not sentence to a period of incarceration as advised by the USSG, and instead sentence her to a period of supervised probation, and if the Court deems it necessary, to include a period of home detention.

### IV.    CONCLUSION

Ms. Coles unequivocally acknowledges the criminal nature of her actions, her guilt and accepts full responsibility for her actions, including any and all punishment that may come as a result. Ms. Coles respectfully requests that this Court sentence her to a period of supervised probation that this Court deems to be in the interest of justice, with whatever terms this Court deems appropriate. In the alternative, Ms. Coles requests that this Court sentence her to a period

of eighteen (18) months home detention, with release to leave her home to attend work Monday through Friday from 8:30 am until 6:00 pm, as well as medical/dental appointments, followed by a period of supervised release for whatever duration and with whatever terms this Court deems to be in the interest of justice. Ms. Coles also requests that whatever sentences this court imposes run concurrently.

        Kendra Coles
        By Counsel

        Respectfully submitted,

        */s/ Billy L. Ponds*
        Billy L. Ponds
        Counsel for the Defendant
        The Ponds Law Firm
        1025 Connecticut Ave, NW
        Suite 1000
        Washington, DC 20036
        Telephone Number: (202) 333-2922
        E-Mail: billy.ponds@pondslawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the Defendant's Memorandum in Aid of Sentencing was sent via email to counsel for the United States, Assistant United States Attorney Joshua Rothstein, on this 31st day of March 2021.

        */s/Billy L. Ponds*
        Billy L. Ponds